IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD SUTTON, | ) | |
| AIS #210657, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-00021-WKW |
| | ) | [WO] |
| FORMER COMMISSIONER | ) | |
| RICHARD ALLEN;[1] | ) | |
| COMMISSIONER KIM THOMAS; | ) | |
| FORMER ATTORNEY GENERAL | ) | |
| TROY KING; ATTORNEY GENERAL | ) | |
| LUTHER STRANGE, and | ) | |
| DANA BURNETT,[2] | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This matter is before the court on a 42 U.S.C. § 1983 action filed by Ronald Sutton

["Sutton"], a Alabama state inmate currently confined at the Limestone Correctional Facility

["Limestone"]. Sutton names as defendants Richard Allen ["Allen"], who served as

---

[1] Pursuant to 25(d) of the Federal Rules of Civil Procedure (amended effective Dec. 1, 2007), the defendants substituted the present commissioner of the Alabama Department of Corrections, Kim Thomas ["K. Thomas"], as a defendant for former commissioner Richard Allen in Thomas's official capacity. Defendants also substituted the present Alabama Attorney General, Luther Strange, as defendant for former Attorney General Troy King. *Defs.' Resp. to Mtn. Prelim. Inj. - Doc. No. 22* at 1 n.1.  Sutton, however, also sues Allen and King in their individual capacities; therefore, the court preserves the claims presented against Allen and King in their individual capacities. *Compl. - Doc. No. 1* at 4.

[2] The court directed that Dana M. Burnett be substituted as a defendant for the State Dietician for the Alabama Department of Corrections. *Order of May 31, 2011- Doc. No. 49.*

Commissioner of the Alabama Department of Corrections at the time of the relevant actions; Kim Thomas ["Thomas"] who is the current Commissioner of the Alabama Department of Corrections;  Troy King ["King"], who  served as the Alabama Attorney General at the time of the relevant actions; Luther Strange ["Strange"], who is the current Alabama Attorney General; and Dana Burnett ["Burnett"], who is an independent contractor and dietician providing dietary services for the Alabama Department of Corrections.  Sutton alleges[3] that defendants are denying him a proper diabetic diet and appropriate footwear in violation of the Americans with Disabilities Act, the Eighth and Fourteenth Amendments to the United States Constitution, the settlement agreement in *Gaddis v. Campbell*, 301 F. Supp.  2d 1310 (M.D. Ala. 2004), and state law.  *Compl. - Doc. No. 1* at 3-7.  Sutton further asserts that defendants conspired to violate his rights.  *Compl. - Doc. No. 1* at 5.  Sutton seeks declaratory and injunctive relief and money damages.  *Id.* at 4, 9.

        In accordance with the orders of this court, the defendants filed answers, special reports, responses to Sutton's request for a temporary restraining order, and supporting evidentiary materials addressing the claims for relief raised in the complaint.  In their reports, the defendants deny that they violated Sutton's constitutional rights and/or state law and further argue that they are entitled to immunity in this case.  *Defs.' Reports - Doc. Nos. 22,*

---

[3]Sutton states in his Objection to the defendants' Report that defendants are retaliating against him. *Pl.'s Obj. - Doc. No. 45* at 8. Sutton did not allege retaliation in his original complaint and did not seek permission to amend his complaint, and defendants have not responded to it.  Consequently, this Court does consider Sutton's claim of retaliation.

*37, 38, 47, 54, 55.*

Pursuant to the court's order entered in this case and governing case law, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. *Order of July 13, 2011 - Doc. No. 57.* Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4] The party moving for summary judgment "always bears the initial responsibility of informing

---

[4] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [– now dispute –] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of

4

professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Sutton is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory

allegations is not sufficient to oppose a motion for summary judgment. . . .").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt

as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Sutton fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment on any of his claims. *Matsushita*, 475 U.S. at 587.

### III. DISCUSSION

### A.  Violation of Settlement Agreement

In *Gaddis*, the parties entered into a settlement agreement regarding challenges to treatment provided to diabetic inmates in the Alabama prison system. That agreement, negotiated by counsel for the plaintiff class of which Sutton is a member, resolved the existing claims for injunctive relief but, by its terms, did not preclude members of the class from bringing individual damage actions. *Gaddis*, 301 F. Supp. 2d at 1322. The agreement did, however, expressly bar enforcement of the settlement agreement in federal court. *Id*. ("This Settlement Agreement is not a consent decree, and is not enforceable in federal court. In the event of non-compliance with the terms of this Settlement Agreement, the plaintiff may only enforce the Settlement Agreement in state court, pursuant to 18 U.S.C.§ 3626(c)(2)(B)."). Thus, to the extent that Sutton bases his complaint on the defendants' alleged violation of the settlement agreement entered in *Gaddis*, he is entitled to no relief, as the agreement is not enforceable in federal court.[5] At best, construing his complaint liberally, as the court is required to do, Sutton's claim challenging the denial of a diabetic diet and footwear amounts to an allegation that defendants acted with deliberate indifference to his medical needs. *See id.* ("The Plaintiffs are not precluded from bringing a new action

---

[5]Before Sutton's case was transferred to this court, the Honorable T. Michael Putnam also noted that Sutton cannot enforce the private settlement by filing a petition directly in *Gaddi*s. *Order of October 6, 2010 - Doc. No. 4* at 1 n.1. In addition, Sutton filed two separate actions in state court complaining that staff at Limestone were not complying with *Gaddis*. The court granted summary judgment in both cases because Sutton failed to show non-compliance with *Gaddis*. *Defs.' Resp. Mtn. Preliminary Inj. Ex. B - Doc. No. 22-2*; *Defs.' Resp. Mtn. Preliminary Inj. Ex. C - Doc. No. 22-3*.

in federal court in the event of non-compliance with the terms of this Settlement Agreement."). The court will analyze it accordingly.

### B. Suit Against the Defendants in Their Official Capacities - Absolute Immunity

To the extent that Sutton sues the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages. from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia*

### C. Defendants Allen, Thomas, King, and Strange[6]

---

[6]*See supra* n.1 regarding defendants Thomas, Strange, Allen, and King sued in their individual capacities.

Sutton does not make allegations specific to these individual defendants or explain how they were personally involved in the alleged failure to provide Sutton a diabetic diet and footwear. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for excessive force against Sutton could attach to defendant Allen only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Sutton, however, has presented no evidence which would create a genuine issue of

disputed fact with respect to the claim regarding his diabetic diet or footwear lodged against these defendants.  Rather, it is undisputed that Allen, Thomas, King, and Strange did not participate in the alleged denial of diabetic diet or footwear.

In light of the foregoing, these defendants can be held liable for decisions of the other defendant only if their actions bear a causal relationship to the purported violation of Sutton's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of the defendants, Sutton must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so. . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [the defendant] directed the [facility's staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so."  *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Sutton has failed to meet this burden.  Sutton alleges there is a history of widespread abuse but provides no facts to support his claim.  *Pl.'s Obj. - Doc. No. 45* at 5.

The record before the court contains no probative evidence to support an inference that Allen, Thomas, King, or Strange directed the other defendants to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action.  In addition, Sutton has presented no evidence of obvious, flagrant, or rampant abuse of continuing duration in the

face of which Allen, Thomas, King, or Strange failed to take corrective action. Finally, the undisputed evidentiary materials submitted demonstrate that the challenged acts did not occur pursuant to a policy enacted by any of these defendants. Thus, the required causal connection does not exist in this case and liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of defendants Allen, Thomas, King, and Strange.

### D. Medical Claim

The remaining defendant is Dana Burnett, the dietary services consultant for the Alabama Department of Corrections. Sutton asserts that Burnett failed to provide him an adequate diabetic diet and footwear in violation of the Eighth Amendment, applicable to the States through the Fourteenth Amendment. In particular, he alleges he must receive milk three times a day, a snack after every meal, and "at least two fresh fruit servings per day. The term fruit is defined as fresh fruit, canned fruit (water packed, rinsed or artificially sweetened), or one-half cup of 100 percent fruit juice." *Compl. - Doc No. 1* at 5; *see also Gaddis*, 301 S. Supp. at 1320-21 (describing fruit serving); *Sutton June 15, 2011, Aff. - Doc. No. 53* at 2. Sutton also complains that he receives cold food three times a day, a dietician is not on site at Limestone, he is not receiving the proper amount of salad or salad dressing, his diet is full of carbohydrates and no soups, and the meat patties served are "not fit for human consumption." *Compl. - Doc. No. 1* at 3, 5; *Sutton Mar. 21, 2011, Aff. - Doc. No. 45-1* at 1; *Sutton June 15, 2011, Aff. - Doc. No. 53* at 3. Finally, Sutton complains that he is not

12

receiving appropriate footwear.  *Compl. - Doc. No. 1* at 6.

To prevail on a claim concerning a purported denial of adequate medical treatment,

an inmate must, at a minimum, show that a defendant acted with deliberate indifference to

his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Sutton v. Adams*, 221 F.3d

1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v.

Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.

1986).  Specifically, officials may not subject an inmate to "acts or omissions sufficiently

harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at

106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations

omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a

condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay

in [the acknowledged necessary] treatment.").

In order to properly establish "deliberate indifference to [a] serious medical need ...,

Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference

to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann

v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When seeking relief based

on deliberate indifference, an inmate is required to establish "an objectively serious need, an

objectively insufficient response to that need, subjective awareness of facts signaling the

need and an actual inference of required action from those facts."  *Sutton*, 221 F.3d at 1258;

*McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then

disregard an excessive risk to the prisoner). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307 (quotation marks and citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838; *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (negligence or malpractice does not state constitutional violation); *Sutton*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, the question of whether government actors should have

employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990).

Sutton is a diabetic who requires insulin and a diabetic diet. *Defs.' Answer ¶ 2- Doc. No. 37.* The affidavits filed by the medical personnel who treated Sutton and administer the diabetic diet address the allegations made by Sutton. A thorough review of the evidentiary materials filed in this case demonstrates that these affidavits are corroborated by the objective medical records compiled contemporaneously with treatment provided to Sutton with respect to the instant claim of deliberate indifference.

Defendant Burnett avers that during the time relevant to the complaint:

I was an independent contractor providing dietary services for the Alabama

Department of Corrections; including but not limited to:
(1) planning, reviewing, updating and analyzing the Alabama Department of
Corrections dietary menus for regular and modified diets;
(2) assisting in developing and purchasing specifications for food products
when requested; and
3) monitoring compliance with health regulations as to those Institutional
menus.

*Burnett Aff. - Doc. No. 55-1* at 3.   Burnett, along with Dr. George Lyrene, the Alabama

Department of Corrections State Medical Director, approved the 1800-calorie wellness diet

and diabetic snack for diabetic inmates.  *Id.* at 4.  Burnett states that the diabetic menu Sutton

received is appropriate:

> The diabetic menu approved for Mr. Sutton includes fruit servings. All diabetic
> or wellness menus include two servings of fruit a day in addition to a vitamin
> C fortified drink, as evidenced by reviewing the standardized diabetic menus
> for the entire State of Alabama Corrections locations. These menus also follow
> guidelines accepted by the American Diabetic Association for all Registered
> Dietitians' use in patient care. Mr. Sutton has been on a diet that is appropriate
> and approved by practice standards and regulations for an individual with his
> medical condition.

*Id.* at 4.  Burnett "did not provide day to day [] supervision of food service operations at

Limestone Correctional Facility."  *Id.*  at 3.  In addition, Burnett is not a licensed nurse and

therefore is not responsible for monitoring Sutton's medical treatment.  *Id.*  Burnett states

that she has inspected the processing plant at Institutional Services, and the United States

Department of Agriculture has approved the meat produced at the plant.  *Burnett Apr. 28,*

*2011, Statement - Doc. No. 47.*

As set forth in the court's recommendation to deny Sutton's request for a preliminary

16

injunction, *Rec. of Feb. 7, 2011 - Doc. No. 28*, Brandon Kinard, a Registered Nurse and the

Regional Clinical Manager for the Alabama Department of Corrections, admits that Sutton

has a history of insulin dependent diabetes, hypertension, asthma, and Hepatitis C. *Kinard*

*Aff. 1 - Doc. No. 21-1.*  Kinard avers that Sutton's diabetes is reviewed by medical personnel,

and he is receiving an approved diabetic diet:

> Mr. Sutton is currently on a 1800 calorie wellness diet with a diabetic snack at night that was ordered on 2/26/2010 and continued on 8/8/2010 by the site nurse practioner. There is documentation that Mr. Sutton has been picking up his tray as ordered along with his diabetic snack. The Alabama Department of Correction's diet manual was published in April of 2009 and has been reviewed and approved by Dr. George Lyrene, M.D., A.D.O.C. State Medical Director, and Dana M. Burnett, M.S., R.D., L.D., A.D.O.C. Consultant Dietician for the Alabama Department of Corrections.
>
> Mr. Sutton is being seen in the diabetic chronic care clinic every three months at Limestone. His last visit was 11/10/2010.  He is currently on 70/30 insulin every morning and Lantus insulin every evening. He also gets Humalog insulin as needed for any blood sugar greater than 200.  His blood sugars are being monitored and documented twice daily. Mr. Sutton's blood sugar control is monitored every three months by a blood test called a Hemoglobin A1C. The last hemoglobin A1C was done on 11/2/2010 and the level was (8.0). With this level being above normal, he was seen on 11/10/2010 and his morning insulin regimen was increased by the treating nurse practioner.  He will have a follow-up hemoglobin A1C in three months to see if the current treatment regimen is keeping his sugar under adequate control.  Mr. Sutton had a urine microalbumin and lipid panel completed on 11/2/2010 to check his renal function and his lipids. An eye exam was completed on 7/15/20 by Dr. Hooks, optometrist, and no diabetic retinopathy was noted.  He was ordered a new pair of eye glasses that he received on 7/29/2010.  Mr. Sutton had a monofilament foot exam completed by the nurse practioner on 11/10/2010.  A callous was documented for this exam and Mr. Sutton was issued a pumice stone.  I see no provider's order or request in the medical record for any specialized diabetic footwear. We do provide footwear for our inmates, but any specialized footwear requires a provider's order. Mr. Sutton had his annual prophylactic dental exam completed on 7/23/2010.

>Mr. Sutton's diabetes will continue to be monitored as above and changes made as needed the providers at Limestone.

*Kinard Aff. - Doc. No. 21-1* at 2-3. In addition, according to Izrell Parker, a Steward III with the Alabama Department of Corrections, diabetic meals are prepared in accordance with the Master Menu certified by Burnett, and Sutton's diabetic meals have always been available to him. *Parker Aff. - Doc. No. 22-5* at 1-13. Kinard's and Parker's statements are corroborated by Sutton's medical and dietary records. *Defs.' Ex. A, B, C - Doc. No. 38-1, Doc. No. 38-2, Doc. No. 38-3.*

Accordingly, based on the record in this case, no reasonable jury could find an Eighth Amendment violation based on defendant Burnett's actions with regard to Sutton's diabetic diet. Under the circumstances of this case, Sutton's diabetes was monitored and appropriately treated, Sutton received a diabetic diet that met approved medical and dietary standards, the food served to him was fit for consumption, medical staff monitored his blood sugar levels, he received insulin, his eyes and feet were monitored for any diabetes-related problems, and medical staff did not determine that he required specialized footwear. Sutton's mere desire for different food or footwear is not a basis for establishing an Eighth Amendment violation, and the treatment of Sutton's diabetic dietary needs was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Sutton simply fail to establish deliberate indifference by Burnett. *Garvin*, 236 F.3d at 898

18

(difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability). Sutton has failed to present any evidence which indicates that Burnett knew that Sutton's diet or that the manner in which Sutton received his diabetic diet created a substantial risk to Sutton's health and that with this knowledge, she consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that Burnett acted with deliberate indifference to Sutton's diabetic needs.  Consequently, summary judgment is due to be granted in favor of Burnett on the Eighth Amendment claim.  *Carter*, 352 F.3d at 1350.

### E.  Americans with Disabilities Act

Plaintiff claims that defendants violated his rights under the ADA. Under Title II of the ADA, public entities may not discriminate against disabled persons. *See* 42 U.S.C. § 12132, et seq. Title II applies to inmates at state correctional facilities. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

Title II does not provide for individual liability.  *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (relying on *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001)).  Consequently, defendants are due to be granted summary

judgment on Sutton's claim for money damages against them in their individual capacities. The Supreme Court has held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Georgia*, 546 U.S. at 159 (emphasis in original); *see also Shepherd v. Corizon, Inc.*, No. CIV.A. 12-0290-WS-N, 2013 WL 1561513, at *1 (S.D. Ala. Apr. 12, 2013) (relying on *Georgia*, 546 U.S. at 159). The court therefore considers whether Sutton has a viable ADA claim.

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," § 12131(1).

*Georgia*, 546 U.S. at 153-54.

To present a claim cognizable "under Title II of the ADA, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from the participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity; (3) by reason of such disability."

*Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir. 2001).

> The remedy Congress chose [in enacting the ADA] is nevertheless a limited one. Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility. 42 U.S.C. § 12131(2). But Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs. It requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service. *Ibid.* As Title II's implementing regulations make clear, the reasonable modification requirement can be satisfied in a number of ways. . . . [I]n the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services. § 35.150(b)(1). Only if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes. *Ibid.* And in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service. §§ 35.150(a)(2), (a)(3).

*Tennessee v. Lane*, 54 U.S. 509, 531-32 (2004).

Assuming that Sutton is a qualified individual with a disability, he cannot show that defendants made any decisions to exclude him from participation in, or deny him the benefits of, programs, services, or activities because of his disability. *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1332, 1334 (11th Cir. 1999) (plaintiff must present evidence the disability constituted a determinative factor in the decision-making process); *McNely v. Ocala-Star Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996). Instead, the only objective evidence

before the court indicates that officials attempted to accommodate Sutton's disability by providing him a diabetic diet and medical treatment for his condition.  *See Farley*, 197 F.3d at 1334.  Consequently, Sutton was not denied participation in or the benefits of programs, services, or activities by reason of his disability.  *See* 42 U.S.C. § 12132.  In light of the foregoing, Sutton's ADA claim provides no basis for relief against defendants in their official capacities, and the defendants are therefore entitled to summary judgment.  Because Sutton cannot show an ADA or constitutional violation, the court need not analyze  whether Title II is a valid abrogation of sovereign immunity from money damages in the circumstances presented by Sutton's case.  *See Georgia*, 546 U.S. at 159 (remanding for determination of what conduct violated Title II, whether that conduct also violated the Fourteenth Amendment, and "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid").

### F.  Conspiracy

Sutton alleges that the defendants conspired to violate his rights. "Conspiring to violate another person's constitutional rights violates section 1983.  *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S. Ct. 183, 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11ᵗʰ Cir. 1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11ᵗʰ Cir.1996)."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11ᵗʰ 2002).  To proceed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff 'must show that the parties

"reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991). . . . [T]he linchpin for conspiracy is agreement. . . ." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832 (1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants. . . ." *Rowe*, 279 F.3d at 1283-84.  Merely "stringing together" acts, without showing contacts which could prove that these parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy. *See Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).  "For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1284.

The court has carefully reviewed Sutton's claim of conspiracy and concludes that summary judgment is due to the defendants on the conspiracy claim because no reasonable jury could find in his favor on his claim against them.  Sutton's assertions are self serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy.  *See Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

**G. State Law Claims**

Finally, to the extent that Sutton asserts a violation of state law as the basis for relief, he is entitled to no relief from this court.  The court's exercise of supplemental jurisdiction over the state law claim is completely discretionary.  Under 28 U.S.C. § 1367(c)(3), the court "may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed [the related federal] claim[] over which it has original jurisdiction . . . ."  The court's discretion is advised by *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.[]  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.[]

*Id.* at 726 (footnotes omitted).  In *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988), the Supreme Court reiterated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,[] the federal court should decline the exercise of jurisdiction by dismissing the [claim] without prejudice . . . ."  *Id.* (footnote omitted).  Accordingly, the court concludes that Sutton's claims alleging a violation of state law should be dismissed without prejudice.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment be GRANTED in favor of defendants with respect to the claims for monetary damages lodged against them in their official capacities

as the defendants are entitled to absolute immunity from these claims.

2.  The motion for summary judgment be GRANTED in favor of defendants in their individual capacities.

3.  The supplemental state claims be DISMISSED without prejudice.

4.  Costs be taxed against the plaintiff.

It is further

ORDERED that on or before January 17, 2014, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 3rd day of January, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE